Filed 5/26/22  Flores v. Kertel Communications, Inc. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| ADRIAN FLORES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>KERTEL COMMUNICATIONS, INC.,<br><br>    Defendant and Appellant. | F081777<br><br>(Super. Ct. No. 19CECG01334)<br><br>**OPINION** |

-ooOoo-

APPEAL from an order of the Superior Court of Fresno County.  Rosemary T. McGuire, Judge.

Fishman, Larsen, & Callister, Douglas M. Larsen and Trinity E. Taylor for Defendant and Appellant.

Lawyers for Employee & Consumer Rights, Shelley K. Mack and Eric D. Hitchcock for Plaintiff and Respondent.

-ooOoo-

Appellant Kertel Communications, Inc., doing business as Sebastian (Kertel), appeals the superior court's order denying Kertel's petition to confirm (petition to confirm) an arbitration award (Arbitration Award) rendered against respondent Adrian Flores.  We reverse and remand to the superior court with directions to enter a new order

vacating the Arbitration Award, and to cause the appointment of an arbitrator to hear the arbitration pursuant to Code of Civil Procedure section 1281.6.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

Flores, as a condition of employment with Kertel, entered into an "AGREEMENT FOR AT-WILL EMPLOYMENT AND ARBITRATION" (Agreement). The Agreement contained an arbitration provision (arbitration provision), which provides as follows:

> "The parties agree to submit to final and binding arbitration any dispute, controversy or claim that arises from the employment relationship, unless arbitration of the dispute would be prohibited by law. This means that a neutral arbitrator, rather than a court or jury, will decide the dispute. This will be the parties' sole and exclusive remedy.

> "This Agreement extends to all claims relating to Employee's employment and termination of employment, including, but not limited to: Claims for breach of contract or an express or implied covenant of good faith and fair dealing; intentional or negligent infliction of emotional distress; defamation; wrongful termination or constructive discharge; unlawful discrimination or harassment, including claims arising under the Fair Employment and Housing Act, the Civil Rights Act of 1964; the Americans with Disabilities Act; wage and hour claims under state or federal law; claims under the Employee Retirement Income Security Act ("ERISA") and the Consolidated Omnibus Budget Reconciliation Act ("COBRA"); and any allegation of injury to physical, mental or economic interests. This Agreement extends to claims that could be brought in court, or before an administrative body, such as the Labor Commissioner, unless the law compels that such claims be brought before the administrative

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

Section 1281.6 provides a method for appointing a neutral arbitrator in the event an arbitration agreement is silent on the manner of appointment. In such cases, absent an agreement on the method of appointment, "the court shall nominate five persons from lists of persons supplied jointly by the parties … or obtained from a … private disinterested association concerned with arbitration." (§ 1281.6.) Thereafter, the parties may choose an arbitrator from the list (or from outside the list) within five days of receiving notice of the nominees from the court. (*Ibid.*) "If the parties fail to select an arbitrator within the five-day period, the court shall appoint the arbitrator from the nominees. (*Ibid.*)

2.

body.  The arbitrator will have authority to determine all issues between the parties, including the validity or enforceability of this Agreement.

"The parties will settle their dispute(s) according to the provisions of California Arbitration Act ("CAA"), including provisions for discovery, provided that the CAA does not undermine the goals and policies of the Federal Arbitration Act ("FAA") or is preempted by the FAA.  The parties' designation of the CAA does not preclude the application of the FAA if the FAA would be applicable.[2]

"To start the arbitration process, either party must submit a written request for arbitration to the other within the applicable statute of limitations.  Employee will pay $435 toward the cost of the arbitration."

On or about July 23, 2018, after his employment with Kertel was terminated, Flores filed a demand for arbitration (arbitration demand) with the American Arbitration Association (AAA) and served it on Kertel.  The arbitration demand alleged causes of action for failure to pay wages (Lab. Code, §§ 204, 206, 216, 218.5, 218.6); failure to pay overtime (*id.*, §§ 510, 1194); failure to timely pay wages (*id.*, §§ 204, 206); failure to provide compliant wage statements (*id.*, §§ 226, 226.3); waiting time penalties (*id.*, §§ 201–203); unfair competition (Bus & Prof. Code, § 17200 et seq.); wrongful termination (Gov. Code, § 12900 et seq.); wrongful termination in violation of public policy; harassment, discrimination, and retaliation (Gov. Code, § 12940, subd. (k)); and failure to produce wage records (Lab. Code, § 226, subd. (b)).  The arbitration demand was served along with a cover letter from Flores' counsel, which read in part:  "We have elected to arbitrate the issue[s] per [the Agreement].  This letter serves as our formal demand for arbitration.  [¶]  As a reminder, [the Agreement] states, 'The parties will settle their dispute(s) according to the provisions of [the CAA], including provisions for discovery….' "

---

**2**    The parties do not argue the CAA does not apply.

3.

The parties agreed to arbitrate Flores' claims before the Honorable Howard R. Broadman (retired) (Arbitrator). Over the next nine months, as part of the arbitration process, the parties engaged in discovery and motion practice.

The Arbitrator ordered the parties to engage in mediation prior to the arbitration hearing. A half-day mediation was scheduled for April 16, 2019. On April 10, 2019, Flores' counsel requested confirmation from Kertel's counsel that Kertel would cover the costs of mediation. Receiving no response, Flores' counsel reiterated the request on April 11, 2019. When no response followed, Flores' counsel unsuccessfully attempted to reach the mediator to determine whether Kertel had paid the full costs of mediation.

On April 15, 2019, the day prior to the scheduled mediation, Flores' counsel notified Kertel's counsel that Flores would not attend because Kertel failed to confirm it would pay the full costs of mediation. Kertel's counsel responded by proposing each party pay half the costs of mediation; that if the case settles at mediation, Kertel will pay the entire costs of mediation; and if it does not settle and Flores prevails, Flores may request the Arbitrator award Flores the costs of mediation as part of an award of costs. Flores' counsel declined the proposal and argued case law required Kertel to pay the full costs of mediation. Kertel's counsel disagreed. He reiterated his proposal on cost allocation but no agreement was reached. That same day, the parties presented the issue to the Arbitrator, who ruled as follows: "The ma[tt]er shall be mediated. I will reallocate fees at the Arbitra[ti]on. Pending the realloca[ti]on each party shall pay 1/2."

On April 17, 2019, Flores filed a complaint in the superior court (civil action) alleging substantively identical claims as those set forth in his arbitration demand.[3] Five days later, Flores' counsel advised Kertel's counsel that Flores "will be moving forward with his claims in Superior Court" and asked whether Kertel would stipulate to stay the

---

[3]     *Flores v. Kertel Com, Inc.* (Super. Ct. Fresno County No. 19CECG01334).

arbitration while Flores requested a ruling from the court on whether Flores must share in the costs of mediation. Kertel declined to stipulate to a stay.

On April 29, 2019, Flores' counsel requested the Arbitrator stay arbitration proceedings pending a ruling from the superior court on Flores' ability to pay mediation costs. Kertel opposed the request noting, among other things, no such costs were incurred due to Flores' refusal to attend the mediation. The Arbitrator denied the stay request.

On May 3, 2019, Flores' counsel served the Arbitrator and Kertel's counsel with a document entitled "NOTICE OF FLORES WITHDRAWAL OF CLAIMS" (withdrawal notice). The withdrawal notice indicated Flores was withdrawing his claims from arbitration and would pursue them in the civil action. The withdrawal notice was largely premised on the contention the Arbitrator's mediation order that Flores pay half the costs of mediation violates the holding in *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83 (*Armendariz*). The withdrawal notice indicated Flores was unable to pay the costs of mediation and that he could not continue with the arbitration without violating the order and exposing himself to charges of contempt and potential fines.

On May 7, 2019, the Arbitrator proposed a conference call with the parties to discuss the withdrawal notice. Kertel's counsel agreed and a call was tentatively scheduled for May 10, 2019. On May 8, 2019, Flores' counsel indicated he would not be available for the call and that, "In any event, Mr. Flores has withdrawn his claims before [the Arbitrator]."

The Arbitrator then set a conference call for May 14, 2019, at 2:00 p.m. Upon being advised that Flores' lead counsel would not be available, the Arbitrator responded, "The call will go forward. If he is unavailable someone else can a[tt]end."

The conference call went forward but Flores' counsel did not participate. The results of the conference call were reported by Kertel's counsel in a document entitled

5.

"NOTICE OF ARBITRATION STATUS CONFERENCE" served on Flores' counsel and the Arbitrator on May 17, 2019. It noted that the Arbitrator "ordered the arbitration to take place at 9:00 a.m. on May 22, 2019," at the offices of Kertel's counsel.

On May 21, 2019, Flores' counsel confirmed receipt of the notice of arbitration status conference but contended the Arbitrator "has no legal or contractual authority to continue to hold hearings on his own motions on this matter" and "[t]here are no claims or counterclaims before [the Arbitrator]."

The arbitration went forward without Flores' participation. On May 22, 2019, the Arbitrator issued the Arbitration Award in which he ordered "[Flores] take nothing, award in favor of [Kertel]." The Arbitration Award was purportedly served on the parties. However, the proof of service indicated the Arbitration Award was served on May 23, 2019, yet the proof of service was signed five days prior thereto on May 17, 2019.

On June 17, 2019, Kertel filed a petition to confirm the Arbitration Award.[4] A hearing on the petition was not scheduled until March 11, 2020, and notice of the hearing was not served until February 11, 2020. The petition to confirm (which included a copy of the Arbitration Award) was personally served on Flores on June 26, 2019.

On July 10, 2019, Kertel filed a motion to compel arbitration of the claims set forth in the civil action. In its motion, Kertel disclosed the fact that an Arbitration Award had previously been issued and that a petition to confirm had been filed. A copy of the Arbitration Award was filed with the superior court and served on Flores' counsel in connection with the motion to compel arbitration. Flores opposed the motion.

---

[4]     *Kertel Communications, Inc., dba Sebastian v. Flores* (Super. Ct. Fresno County No. 19CECG02124).

On September 4, 2019, the superior court granted Kertel's motion to compel arbitration and stayed the civil action.[5] The court rejected Flores' claim that the arbitration provision was unconscionable, finding no substantive unconscionability. In so finding, the court, citing *Armendariz*, *supra*, 24 Cal.4th at page 113, indicated it was interpreting the arbitration provision as requiring Kertel to "bear the arbitration forum costs, including mediation costs which would not otherwise arise."[6] The court ruled that "each of plaintiff's claims are subject to arbitration" and rejected Flores' claim that he may continue to pursue his claims in the civil action. The court wrote:

> "In the case at bar, [Flores] cites to *Roldan* [*v. Callahan & Blaine* (2013) 219 Cal.App.4th 87] for the proposition that he has the right to bring this lawsuit—as a result of [Kertel's] refusal to pay mediation costs. However, *Roldan* holds no such thing. Rather, as stated above, *Roldan* allows a plaintiff to seek relief from having to pay such fees via motion, not via lawsuit. [Flores] also cites to *Tillman v. Rheingold, Valet, Rheingold, Shkolnik & McCartney* (9th Cir. 2016) 825 F.3d 1069. But *Tillman* is non-binding federal authority."

On February 28, 2020, Flores filed his opposition to the petition to confirm arguing that he had withdrawn his claims from arbitration due to his inability to pay half the costs of mediation as ordered by the Arbitrator; that the Arbitrator lacked subject matter jurisdiction over Flores' claims; and that the petition to confirm "must be dismissed pursuant to … [s]ection 1287.2 because [Flores] was no longer a party to the arbitration proceedings at the time that [Arbitration Award] was issued." In the alternative, Flores argued the petition to confirm should be denied in the superior court's "sound exercise of its equitable discretion, in order to avoid the manifest injustice that would result from confirmation of the [A]rbitration [A]ward under these circumstances."

---

[5] The superior court's order to compel arbitration is not on appeal.

[6] The superior court rejected Kertel's argument that it was "justified in requiring [Flores] to pay for mediation because [he] would have had to do so, if the case was litigated in Superior Court." The court found that "using court ordered mediation services, [Flores] would be entitled to initial mediation services at no cost."

On July 28, 2020, the superior court issued its order denying the petition to confirm and ordered the matter consolidated with the civil action. The court determined that, because Flores had withdrawn his claims from the arbitration on May 3, 2019, he "was not a party to the arbitration" and was not bound by the Arbitration Award.

On September 25, 2020, Kertel timely appealed the superior court's order denying the petition to confirm.

## DISCUSSION

### I. Standard of Review

In reviewing a superior court's ruling on a petition to confirm an arbitration award, "[w]e apply the substantial evidence test to the [superior] court's determination of disputed factual issues. [Citation.] 'Issues of statutory interpretation and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review by this court.' " (*Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1087.)

The relevant facts are undisputed. There is no dispute the parties agreed to mediate Flores' claims by signing the Agreement which contains the arbitration provision, that Flores invoked the right to arbitrate those claims when he filed the arbitration demand with the AAA and served it upon Kertel, and that the parties conducted discovery and motion practice as part of the arbitration process. Similarly, there is no dispute as to the content of the Arbitrator's mediation order, the parties' attempts to resolve the dispute over payment of mediation costs, Flores' subsequent service of the withdrawal notice, and the parties' practice before the superior court with regard to the petition to confirm, the civil action, and the petition to compel arbitration. It is the legal effect of these undisputed facts that is at issue.

The first question before us is whether the superior court correctly determined, on the basis of the undisputed facts, that Flores was not a "party to the arbitration" as that term is defined in the CAA, and that Flores was, therefore, not bound by the Arbitration

Award. Accordingly, our review is de novo. (*Soni v. SimpleLayers, Inc.*, *supra*, 42 Cal.App.5th at p. 1087.)

## II.   Analysis

### A.   *Armendariz v. Foundation Health Psychcare Services, Inc.*

Flores' decision to "withdraw" from the arbitration was premised primarily on the holding in *Armendariz* in which the California Supreme Court held that "a mandatory employment arbitration agreement that contains within its scope the arbitration of FEHA[7] claims impliedly obliges the employer to pay all types of costs that are unique to arbitration." (*Armendariz*, *supra*, 24 Cal.4th at p. 113.) That holding has been extended to other employment related claims. (See, e.g., *Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1076 [wrongful termination in violation of public policy]; *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 180 [statutes enacted for a public reason, including Lab. Code, §§ 230.8 & 970].)

In *Armendariz*, as in the present case, the arbitration agreement at issue did not contain an express provision obligating the employee to pay costs unique to the arbitration. (*Armendariz*, *supra*, 24 Cal.4th at p. 92.) As a result, the Supreme Court "interpret[ed] the arbitration agreement … as providing … that the employer must bear the arbitration forum costs." (*Id.* at p. 113.) The Supreme Court stated, "The absence of specific provisions on arbitration costs would therefore not be grounds for denying the enforcement of an arbitration agreement." (*Ibid.*)

Consistent with the approach laid out in *Armendariz*, the superior court, in its order compelling arbitration of the civil action, interpreted the arbitration provision as impliedly obligating Kertel to pay the costs unique to the arbitration—including mediation costs.

---

**7**      Fair Employment and Housing Act (Gov. Code, § 12900 et seq.).

### B. *Petition to Confirm*

Kertel brought its petition to confirm pursuant to section 1285 which reads: "Any party to an arbitration in which an award has been made may petition the [superior] court to confirm, correct or vacate the award. The petition shall name as respondents all parties to the arbitration and may name as respondents any other persons bound by the arbitration award." (§ 1285.) In responding to such a petition, a party "may request the court to dismiss the petition or to confirm, correct or vacate the award." (§ 1285.2.) If a party seeks to vacate or correct an arbitration award, either by way of a separate petition or in response to a petition to confirm the award, that party must do so within "100 days after the date of the service of a signed copy of the award" on him or her. (§§ 1288, 1288.2; *Coordinated Construction, Inc. v. Canoga Big "A," Inc.* (1965) 238 Cal.App.2d 313, 316.) The 100-day limitation period is jurisdictional. (*Abers v. Rohrs* (2013) 217 Cal.App.4th 1199, 1211.)

Upon proper service and filing of a petition to confirm or response thereto, the superior court "shall confirm the award as made, … unless in accordance with this chapter [i.e., §§ 1285–1288.8] it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." (§ 1286.)

In opposing the petition to confirm, Flores contended that because he withdrew his claims from arbitration, the Arbitrator lacked subject matter jurisdiction over those claims. He requested the superior court dismiss the petition to confirm pursuant to section 1287.2 on grounds he was not a "party to the arbitration proceedings." In that regard, section 1287.2 provides: "The court shall dismiss the proceeding under this chapter as to any person named as a respondent if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration." (§ 1287.2.) In the alternative, Flores requested the court deny the petition in the "sound exercise of its equitable discretion, in order to avoid … manifest injustice."

The superior court found merit in Flores' objections. Although the court concluded Flores was "not moving to vacate on any of the grounds provided in … section 1286.2," it ruled: "[Flores] was not a party to the arbitration that occurred on May 22, 2019. It is undisputed that [Flores'] claims against defendant were withdrawn from arbitration on May 3, 2019. Pursuant to [] section 1287.2, as [Flores] was not a party to the arbitration, he is not bound by the [A]rbitration [A]ward."

## C.   *Douglass v. Serenivision, Inc.*

On appeal, Kertel relies on *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376 (*Douglass*) for the proposition that subject matter jurisdiction is a matter of contract. Kertel further contends the facts of *Douglass* are similar to the case at bar and that the result should be the same.

In *Douglass*, the respondent signed a contract on behalf of his company to obtain services from an internet advertising company. (*Douglass*, *supra*, 20 Cal.App.5th at p. 381.) The contract incorporated terms of a master agreement which required all disputes relating to the contract be resolved by binding arbitration and provided that an individual who signs the contract guarantees his company's performance under the contract. (*Ibid*.) When the advertising company did not get paid, it filed a demand for arbitration against the respondent and his company. (*Ibid*.) In his answer, the respondent admitted signing the contract but denied liability because he refused to sign the master agreement. (*Id*. at pp. 381–382.)

Five months after answering, the *Douglass* respondent appeared at a preliminary hearing before the arbitrator and said he was " 'appear[ing] voluntarily and submit[ting]' " to the arbitrator's jurisdiction. (*Douglass*, *supra*, 20 Cal.App.5th at p. 382.) The following month, the respondent wrote opposing counsel and indicated he would " 'decline to participate in the arbitration' " unless the advertising company posted a bond to cover his attorney fees in the event he prevailed. (*Ibid.*) Several months later, and only 19 days before an evidentiary hearing was to be held in the arbitration, the

11.

respondent wrote the arbitrator and advised of his previous demand to the advertising company for a bond and its refusal of that demand. (*Ibid.*) He stated a bond was necessary for the arbitrator to exercise jurisdiction over the dispute. (*Ibid.*) The arbitrator construed the letter as an expedited request for an order requiring the bond and denied the motion. (*Ibid.*) In response, the respondent wrote the arbitrator and indicated he was " 'terminat[ing] his voluntary appearance' " and would not participate further in the arbitration proceedings. (*Ibid.*)

The arbitration proceeding in *Douglass* went forward without the respondent's participation and an award issued in favor of the advertising company. (*Douglass*, *supra*, 20 Cal.App.5th at pp. 382–383.) The trial court confirmed the award and the appellate court affirmed. (*Id.* at pp. 383, 394.) The appellate court held "the subject matter jurisdiction *of an arbitrator* is purely a product of contract [citation], which by definition turns on the parties' mutual *consent*" and found the respondent's conduct amounted to consent to the arbitrator's jurisdiction and a waiver of his right to proceed in a judicial forum. (*Id.* at pp. 385, 390, 391.)

Flores contends *Douglass* is readily distinguishable from the case at hand because *Douglass* involved "two business entities," not "mandatory employment arbitration." He argues, "None of the public policy consideration protecting employees and their ability to vindicate their statutory and constitutional rights in the context of mandatory employment arbitration were at play in *Douglass*." He further notes the respondent in *Douglass* "had withdrawn from arbitration simply to evade an adverse ruling against him, within the scope of the arbitrator's legitimate discretion," whereas, here, "the only ruling the [A]rbitrator made on the merits prior to [Flores'] withdrawal—his denial of [Kertel's] motion for summary judgment—was in [Flores'] favor, not [Kertel's]." Flores argues *Douglass* does not stand for the proposition that "no claimant in arbitration may ever withdraw unilaterally after having first voluntarily participated in the arbitration process."

Flores also cites *National Union Fire Ins. Co. v. Stites Prof. Law Corp.* (1991) 235 Cal.App.3d 1718 (*National Union*) for the proposition that subject matter jurisdiction can be challenged at any stage of the proceedings and that *Douglass* "did nothing to 'correct' or 'clarify' the *National Union* court's ruling with regard to the timing of challenges to an arbitrator's subject matter jurisdiction."

We generally agree with Flores that challenges to subject matter jurisdiction may be raised at any stage of the proceedings. (*National Union*, *supra*, 235 Cal.App.3d at pp. 1723–1724.) However, Kertel does not contend on appeal that Flores is barred from raising the issue. We also agree with Flores that there are policy differences and factual distinctions between *Douglass* and the case at bar. On the other hand, we largely agree with the proposition that a party, through his or her conduct, "can waive their right to litigate in a particular judicial forum" and that, generally speaking, " '[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act.' " (*Douglass*, *supra*, 20 Cal.App.5th at p. 389.) A contrary ruling would encourage forum shopping and would frustrate the " ' " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " ' " (*Id*. at p. 389.)

We also agree with Kertel that parties are free to confer subject matter jurisdiction on an arbitrator by contract. Generally speaking, an arbitrator may " 'decide any issue which the parties willingly present to it.' " (*Hydrothermal Energy Corp. v. Fort Bidwell Indian Community Council* (1985) 170 Cal.App.3d 489, 497.) " 'The powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission.' " (*O'Malley v. Petroleum Maintenance Co.* (1957) 48 Cal.2d 107, 110.)

### D. *Subject Matter Jurisdiction*

Flores' contention that the Arbitrator lacked subject matter jurisdiction is premised solely on the fact that Flores withdrew his claims from the arbitration pursuant to his withdrawal notice. The parties do not dispute, however, that Flores' claims were of a

13.

type that were required to be arbitrated under the express terms of the arbitration provision. The arbitration provision was broad enough to encompass all of Flores' claims.

### E. *Party to the Arbitration*

Notably, in issuing its order denying the petition to compel, the superior court did not consider the statutory definition of the phrase "party to the arbitration." That phrase is defined in the CAA as follows:

> " 'Party to the arbitration' means a party to the arbitration agreement, including any of the following: [¶] (1) A party who seeks to arbitrate a controversy pursuant to the agreement. [¶] (2) A party against whom such arbitration is sought pursuant to the agreement. [¶] (3) A party who is made a party to the arbitration by order of the neutral arbitrator upon that party's application, upon the application of any other party to the arbitration, or upon the neutral arbitrator's own determination." (§ 1280, subd. (h).)

Here, Flores was a party to the Agreement which contained the arbitration provision. The arbitration provision provided: "To start the arbitration process, either party must submit a written request for arbitration to the other within the applicable statute of limitations." Thus, the arbitration provision was self-executing in that it "permitted and provided for arbitration under rules therein incorporated without the necessity of securing a prior court order under section 1281.2." (*Titan Enterprises, Inc. v. Armo Construction, Inc.* (1973) 32 Cal.App.3d 828, 830, disapproved on other grounds in *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 188.) Consistent with the arbitration provision's terms, Flores sought to arbitrate "a controversy" (i.e., his claims) by filing the arbitration demand with the AAA, serving it on Kertel, and by participating in arbitration proceedings.

In response, Kertel voluntarily submitted to the jurisdiction of Arbitrator. Thus, no judicial involvement was necessary to commence arbitration proceedings. (See *Rosenson v. Greenberg Glusker Fields Claman & Machtinger LLP* (2012)

203 Cal.App.4th 688, 694 [noting that an order compelling arbitration under § 1281.2 may only be obtained upon allegations of the "existence" of an agreement to arbitrate a controversy *and* that a party to the agreement "*refuses* to arbitrate the controversy"].)

We conclude Flores was a "party to the arbitration" at least up until the time he served his withdrawal notice on Kertel and the Arbitrator. Accordingly, we consider the effect of the withdrawal notice and whether that altered Flores' status as a party to the arbitration.

### F.     *Withdrawal Notice*

Kertel has framed the issue before this court as follows: "Whether an employee who signs an arbitration agreement, and thereafter engages in arbitration proceedings, including discovery and motion practice for over a period of nine months, can withdraw from arbitration within weeks of the scheduled arbitration hearing and thereafter claim the arbitrator lacks subject matter jurisdiction to hold the arbitration hearing." To this, we would add to our consideration Flores' contention he had sufficient cause to withdraw from the arbitration. We conclude Flores' withdrawal was ineffective to alter his status as a party to the arbitration.

In *Arrieta v. Paine, Webber, Jackson & Curtis, Inc*. (1976) 59 Cal.App.3d 322 (*Arrieta*), a plaintiff sued his stockbroker and its employees for various torts, breach of contract, and common counts. (*Id*. at p. 325.) The parties stipulated to stay the matter in order to arbitrate their disputes before either of two arbitral forums. (*Id*. at p. 326.) The plaintiff paid the arbitration fees and the arbitration went forward in the chosen forum. (*Ibid*.) The arbitrator's ruling resulted in a dismissal of all claims and counterclaims. (*Ibid*.) The plaintiff petitioned to vacate the award and for an order referring the arbitration to the alternate forum and stockbroker petitioned for confirmation of the award. (*Ibid*.) The trial court confirmed the award and the plaintiff appealed. (*Ibid*.)

In his affidavit to the trial court, the *Arrieta* plaintiff averred that there were numerous irregularities in the first day of proceedings which the plaintiff said unduly

15.

influenced the arbitrators and rendered the proceedings unfair; that the proceedings were then continued for a month due to scheduling conflicts; and that before the second day of hearing commenced, the plaintiff requested a postponement of proceedings so that he could seek arbitration before the alternate arbitral forum. (*Arrieta*, *supra*, 59 Cal.App.3d at p. 327.)

One of the grounds for appeal asserted by the *Arrieta* plaintiff was that "he had the power to revoke the right of the arbitrators to proceed." In response, the appellate court wrote:

> "An agreement to submit to arbitration is valid, enforceable, and irrevocable, save upon grounds for revocation of any contract. (Code Civ. Proc., § 1281.) 'Once a controversy is submitted to arbitration, it remains before the arbitrators until they have completed their determination of the matter, *unless the parties mutually agree to withdraw it*.' " (*Arrieta*, *supra*, 59 Cal.App.3d at pp. 329–330, italics added, quoting *Gerard v. Salter* (1956) 146 Cal.App.2d 840, 844 (*Gerard*).)

In *Gerard*, the trial court confirmed an arbitration award rendered in two consolidated actions. (*Gerard*, *supra*, 146 Cal.App.2d at p. 842.) The first action was brought by a builder against a property owner for whom it did construction work and for which he was claiming additional compensation. (*Ibid*.) The second action was brought by the property owner against the builder for construction defects. (*Ibid*.) The first action was arbitrated pursuant to a contractual arbitration provision. (*Ibid*.) At a hearing on confirmation of the award, the parties stipulated that the matter be referred back to the same panel of arbitrators for the additional consideration and determination of the second action along with the first. (*Ibid*.) An award was issued on the consolidated cases and confirmed by the trial court. (*Id*. at p. 843.)

On appeal, the *Gerard* court rejected the property owners' contention that "the arbitrators had no power or jurisdiction to determine" the property owners' construction defect suit. (*Gerard*, *supra*, 146 Cal.App.2d at pp. 843–844.) The *Gerard* court wrote:

16.

"The issues were fairly submitted by stipulation to arbitrators for determination under section 1280 et seq. of the Code of Civil Procedure. No action was ever taken in the court by appellant to be relieved of the stipulation. No sufficient revocation is indicated as suggested by section 1280 of the Code of Civil Procedure. A hearing was had, findings were made, and the court, after a full consideration of the entire matter, adopted those findings and rendered judgment in accordance with them. Once a controversy is submitted to arbitration, it remains before the arbitrators until they have completed their determination of the matter, unless the parties mutually agree to withdraw it. *Thus, when the parties agree upon an umpire to abide by his decision, neither of them, without the consent of the other, may, in the absence of fraud, withdraw the question of performance from the common arbiter for the purpose of referring it to a court or jury*. (5 Cal.Jur.2d 100, § 26; *Church v. Shanklin* [(1892)] 95 Cal. 626.)" (*Gerard*, *supra*, 146 Cal.App.2d at p. 844, italics added.)

The *Arrieta* and *Gerard* cases differ from the case at bar in that the arbitration hearings had either concluded (*Gerard*) or were in progress (*Arrieta*). Moreover, they did not involve arbitration of employment related disputes between an employer and employee. Nonetheless, the cases are instructive. They stand for the general proposition that once parties submit a matter to arbitration, they may not, in the absence of fraud, withdraw from the arbitration absent agreement of all parties. The agreement to arbitrate remains valid and enforceable "save upon such grounds as exist for the revocation of any contract."**8** (§ 1281.) The foregoing proposition is also consistent with the principle stated in *Douglass* that " '[a] claimant may not voluntarily submit his claim to arbitration, await the outcome, and if the decision is unfavorable, challenge the authority of the arbitrator to act.' " (*Douglass*, *supra*, 20 Cal.App.5th at p. 389.)

Here, Kertel did not consent to Flores' attempt to withdraw his claims from the arbitration. Consequently, we conclude the withdrawal notice did not alter Flores' status as a "party to the arbitration." Thus, we cannot affirm the superior court's ruling on the

---

**8** " '[T]he "revocation of a contract" … is something of a misnomer. "Offers are 'revoked.' … Contracts are extinguished by rescission." ' " (*Armendariz*, *supra*, 24 Cal.4th at p. 98, fn. 4.)

17.

grounds relied upon by the court. However, as discussed in the next section of this opinion, we are of the opinion that relief of a different type is warranted.

### G. *Flores' Request for Equitable Relief to Prevent a Miscarriage of Justice*

In opposing Kertel's petition to confirm the Arbitration Award, Flores requested the superior court deny the petition in its equitable discretion "to avoid the manifest injustice that would result from confirmation" of the award. After examining the various policy considerations implicated by Flores' request, the superior court's analysis and ruling on Kertel's motion to compel arbitration, and this court's authority (albeit, limited) to grant extraordinary relief where necessary to protect a party's statutory rights, we conclude Flores is entitled to relief.

#### 1. Policy Considerations

We begin our analysis by recognizing various policy considerations relevant to arbitrations, in general, and, in the employer/employee context.

Undoubtedly, there is a " 'strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 (*Moncharsh*).) " 'The policy of the law in recognizing arbitration agreements and in providing by statute for their enforcement is to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' " (*Ibid.*) There is both a strong federal and state policy favoring the enforcement of arbitration provisions. (*Armendariz*, *supra*, 24 Cal.4th at pp. 96–97.)

However, the policy favoring enforcement of arbitration agreements is not without limits. *Armendariz* and its progeny hold that employment contracts which require an employee to arbitrate certain employment related claims may not impose on the employee additional costs unique to the arbitration. (*Armendariz*, *supra*, 24 Cal.4th at p. 113; *Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at p. 1076; *Mercuro v. Superior*

18.

*Court*, *supra*, 96 Cal.App.4th at p. 180.)  Notably, the latter limitation on enforcement of arbitration agreements was not at issue in *Arrieta*, *Gerard* or *Douglass*.

More generally, there is a "policy of the law to have every litigated case tried on its merits."  (*Sanford v. Smith* (1970) 11 Cal.App.3d 991, 998.)  Unlike the parties in *Arrieta* and *Gerard*, Flores did not actually participate in the arbitration hearings that commenced on May 22, 2019.  This came as no surprise to Kertel or the Arbitrator because Flores notified them he did not intend to move forward with the arbitration hearing, and that he had filed a complaint in the superior court asserting the same claims he had asserted in his arbitration demand.  Kertel moved to compel arbitration of the complaint but not until after the arbitration hearing and issuance of the Arbitration Award.  As a result, the Arbitration Award was akin to entry of a default award against Flores.

Notably, within the last several years, the Legislature has passed legislation to further protect an employee's rights in the context of employee/employer arbitrations.  In 2019, the Legislature passed Senate Bill No. 707 (2019–2020 Reg. Sess.) which codified sections 1281.97 and 1281.98.  Section 1281.98 provides, in relevant part:  "In an employment or consumer arbitration that requires, either expressly or through application of state or federal law or the rules of the arbitration provider, that the drafting party pay certain fees and costs during the pendency of an arbitration proceeding, if the fees or costs required *to continue* the arbitration proceeding are not paid within 30 days after the due date, the drafting party is in material breach of the arbitration agreement, is in default of the arbitration, and waives its right to compel the employee or consumer to proceed with that arbitration as a result of the material breach."  (*Id*., subd. (a)(1), italics added; see § 1281.97, subd. (a)(1) [providing similarly in situations where the drafting party is required to pay "certain costs and fees *before the arbitration can proceed*" (italics added)].)

Neither section 1281.97 nor 1281.98 were in effect at the time Flores attempted to withdraw from the arbitration and we have found nothing in the text of those statutes or in their legislative history to suggest the Legislature intended them to have retroactive effect. (See *Phillips v. St. Mary Regional Medical Center* (2002) 96 Cal.App.4th 218, 229 ["Generally, statutes do not apply retroactively unless the Legislature clearly indicated otherwise."].) Nonetheless, these recently enacted statutes reflect a shift in public policy by permitting an employee to unilaterally withdraw from an arbitration when, for example, the employer is obligated by law to pay certain costs of the arbitration and fails to do so within 30 days of them becoming due. (§§ 1281.97, subd. (b)(1), 1281.98, subd. (b)(1).)

### 2. The Superior Court's Ruling on Kertel's Motion to Compel Arbitration

In considering whether Flores is entitled to relief from the Arbitration Award, we next examine the superior court's order on Kertel's motion to compel arbitration. After finding the arbitration provision procedurally unconscionable, the court considered whether it was likewise substantively unconscionable.[9] Citing *Armendariz*, *supra*, 24 Cal.4th at pages 102–114, the court noted that, to be enforceable, the provision must have "no requirement that employees pay either unreasonable costs or any arbitrators' fees or expenses as a condition of access to the arbitration forum." The court found, we believe correctly, that the cost of mediation (in the context of this case) was unique to the arbitration. Had the Agreement contained an express provision requiring Flores to pay costs unique to the arbitration, the court could have refused enforcement of the arbitration

---

[9]    The trial court's determination the Agreement was procedurally unconscionable rested on its findings that (1) Kertel, the party with superior bargaining power, drafted the Agreement; (2) the Agreement was a standardized contract; and (3) Flores was not given an opportunity to opt out of the arbitration provision contained in the Agreement.

20.

provision or, at a minimum, enforcement of the offending provision on grounds of unconscionability.  (Civ. Code, § 1670.5.)

Although the Agreement was silent on the issue of mediation costs, the Arbitrator's mediation order, as applied, had the effect of rendering the arbitration provision unconscionable.  In order to save the provision from a determination it was unconscionable, the superior court was required to construe the Agreement in a manner contrary to the Arbitrator's mediation order.  It was not until the court issued its ruling on Kertel's motion to compel arbitration that Flores obtained a judicial determination he could not be forced to pay mediation costs.

### 3.    Judicial Review of Arbitration Awards

Finally, we are cognizant of the limitations on judicial review of arbitration awards.  As stated in *Moncharsh*, "an award reached by an arbitrator pursuant to a contractual agreement to arbitrate is not subject to judicial review except on the grounds set forth in sections 1286.2 (to vacate) and 1286.6 (for correction).… [¶]  [T]he normal rule of limited judicial review may not be avoided by a claim that a provision of the contract, construed or applied by the arbitrator, is 'illegal,' except in rare cases when according finality to the arbitrator's decision would be incompatible with the protection of a statutory right.  (*Moncharsh*, *supra*, 3 Cal.4th at p. 33.)  We conclude this is one of those rare cases.

There are certain anomalies presented by the facts of this case which we feel compelled to discuss.  For example, Flores never received proper notice of the Arbitration Award sufficient to apprise him of any jurisdictional time limits on seeking to vacate the award.  The proof of service for the Arbitration Award is defective on its face having been signed on May 17, 2019, and attesting to conduct that, by its own wording, would not have occurred until May 23, 2019.  The record does not show that defect was ever corrected by the parties.

21.

Although one might argue Flores received actual notice of the Arbitration Award due to the fact it was attached to Kertel's petitions to confirm the award and to compel arbitration, Flores still could not thereby determine an actual date by which he would have had to seek to vacate the Arbitration Award. This procedural anomaly caused uncertainty and operated to Flores' prejudice.

Under the facts of this case, had Flores brought a petition to vacate the award, the superior court would have been justified in granting the petition. Section 1286.2 provides that a court "shall vacate the award" if the "arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision." (*Id.*, subd. (a)(4).) Here, the Arbitrator exceeded his powers by issuing the mediation order in violation of well-established case law. Moreover, because the matter was not decided on the merits, the Arbitration Award could not be corrected to reflect a decision on the merits.[10]

The earliest Flores received *actual* notice of the Arbitration Award was upon receipt of Kertel's petition to confirm the Arbitration Award. The proof of service for said petition indicates it was personally served on Flores on June 26, 2019. If we were to use that date as the date upon which the Arbitration Award was filed and served on Flores, we calculate that Flores would have had until October 4, 2019, to seek a ruling from the trial court to vacate the Arbitration Award. (See §§ 1288 [petition to vacate "shall be served and filed not later than 100 days after" valid service of an arbitration

---

**10**     Flores had additional grounds to petition the superior court to vacate the Arbitration Award. Section 1286.2 provides, in part, "the court shall vacate the award if … [¶] …[¶]  The rights of the party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor …." (*Id.*, subd. (a)(5).)  Here, Flores sought a continuance from the Arbitrator in order to obtain a ruling from the court as to whether, contrary to *Armendariz*, he must bear costs of mediation. The court could have reasonably found sufficient cause existed to postpone the hearing and that the failure to postpone substantially prejudiced Flores.

award], 1288.2 [same time limit for requesting an arbitration award be vacated in response to a petition to confirm].)

Although Flores did not do so in the context of a petition to vacate the Arbitration Award, he did raise his objections to the Arbitration Award and to the mediation order within 100 days of first receiving actual notice. Specifically, on August 21, 2019, Flores raised those objections in his opposition to Kertel's motion to compel arbitration. Moreover, he reiterated those objections in his opposition to Kertel's petition to confirm.

We conclude this is one of the "rare cases when according finality to the arbitrator's decision would be incompatible with the protection of [Flores'] statutory right[s]." (*Moncharsh*, *supra*, 3 Cal.4th at p. 33.) Flores timely presented the superior court with facts and arguments that would have supported an order vacating the Arbitration Award, albeit in the context of opposing a motion to compel arbitration. Although he requested the court find he was not a "party to the arbitration," it is clear his goal was to invalidate the Arbitration Award. Because he was not properly served with the Arbitration Award (due to an invalid proof of service), Flores could not definitively determine the jurisdictional time frame within which to bring a petition to compel. Accordingly, we will not hold it against him that his arguments were not presented in a formal petition to vacate or in a response to a petition to confirm.

Our conclusion is further supported by the policy in favor of having cases determined on their merits (*Sanford v. Smith*, *supra*, 11 Cal.App.3d at p. 998), the policies reflected in *Armendariz* and its progeny, and the policy reflected in sections 1281.97 and 1281.98, which now authorize unilateral withdrawals from arbitration under facts similar to those at issue here.

## DISPOSITION

The order denying Kertel's motion to confirm is reversed with directions to the superior court to enter a new order vacating the Arbitration Award, and to cause the appointment of an arbitrator to hear the arbitration pursuant to section 1281.6. Our

23.

holding is limited to the facts of this case.  In the interests of justice, the parties shall bear their own costs on appeal.


DE SANTOS, J.

WE CONCUR:


HILL, P. J.


PEÑA, J.