[Civ. No. 13808. Fourth Dist., Div. Two. Jan. 29, 1975.]

GARY E. SPENCE et al., Plaintiffs and Appellants, v.
OMNIBUS INDUSTRIES et al., Defendants and Respondents.

COUNSEL

Leonard C. Broudy for Plaintiffs and Appellants.

Perkal, Petty & Barbaro and Donald W. Perkal for Defendants and Respondents.

OPINION

**GARDNER, P. J.**—Plaintiffs, husband and wife, are home owners. Defendant corporation is a building contractor specializing in remodeling. Plaintiffs and Defendants entered into a contract by the terms of which defendants were to do certain remodeling of plaintiffs' home. The contract was provided by defendant. It was a standardized document. On its face is a description of the work to be done and the price to be paid. On the reverse side are certain printed "terms and conditions." Paragraph 30 of these "terms and conditions" provides for arbitration in accordance with the rules of the American Arbitration Association.

A dispute arose between the parties and plaintiffs sued defendants for damages alleging breach of contract and fraud. The total demand was $37,000. Defendants filed a petition for arbitration under the contract. The court granted the petition and, in addition, ordered that plaintiffs

pay the filing fee. While plaintiffs have no argument with the order for arbitration, they complain of that portion of the order which provides that they are to pay the arbitration filing fee. Their distress is understandable. The filing fee for arbitration is $720.

While there is a strong public policy favoring arbitration (*Lesser Towers, Inc.* v. *Roscoe-Ajax Constr. Co.,* 271 Cal.App.2d 675, 702 [77 Cal.Rptr. 100]), the facts of this case make it clear that arbitration is not necessarily an inexpensive method of adjusting controversies. As we shall see, an arbitration provision, if improperly applied, may effectively deny an injured party a forum for resolution of his complaints.

Under the Construction Industry Arbitration Rules, there is a sliding scale of filing fees based on the amount of the claim. For a claim up to $10,000, the fee is 3 percent with a minimum of $100. From $10,000 to $25,000, the fee is $300 plus 2 percent of the excess over $10,000. From $25,000 to $100,000, the fee is $600 plus 1 percent of the excess over $25,000. (Construction Industry Arbitration Rules, effective March 1, 1974, Administrative Fee Schedule, p. 14.)

The contrast between these fees and court filing fees is rather startling. For example, a home owner with a claim of $500 could bring an action in small claims court for $2. It would cost him $100 to submit the matter to arbitration. If the claim were for $5,000, he could sue in municipal court for $15. Again, it would cost him $100 to submit the matter to arbitration. But the real crunch comes in larger claims. In the instant case, with a claim of $37,000, the filing fee in the Superior Court of Riverside County is $50.50, but it will cost plaintiffs $720 to submit the matter to arbitration—a not inconsiderable disparity. The reason for this disparity is obvious. Courts are established and supported by the state in order to afford forums to which all, rich and poor alike, may present controversies at minimum cost to the parties. Arbitration is supported by the parties. If the parties are equal in bargaining power, arbitration is good. If the parties are not equal, arbitration may deny a forum to the weaker.

To start our discussion in the instant case, we observe that the contract between plaintiffs and defendants is a contract of adhesion. ■ It is a ". . . standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." (*Neal* v. *State Farm Ins. Cos.,* 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) ■ In recent

years the concept has developed that the courts will modify or nullify harsh terms in a contract of adhesion which defeat the reasonable expectations of the parties. (1 Witkin, Summary of Cal. Law (8th ed. 1973) § 13, p. 36.) Since the party of superior bargaining power not only prescribes the words of the instrument but the party who subscribes to it lacks the economic strength to change that language, any ambiguity in the contract is resolved against the draftsman and questions of doubtful interpretation will be construed in favor of the subscribing party. (*Neal, supra,* 188 Cal.App.2d 690, 695.) In the instant contract, over 2,000 words are jammed into a tightly printed jumble of "terms and conditions." Although the face of the contract declares that the signatories have read the "terms and conditions" on the back, it would be optimistic, nay, rash, to venture that one in one hundred home owners ever read the mass of information on the reverse page.

While there is a strong judicial policy favoring arbitration, there is just as strong a judicial concern regarding the weaker bargaining powers of consumers. The use of standardized or mass-produced agreements containing a profusion of provisions which allow the stronger party to dictate the terms to the weaker party is viewed with judicial concern.[1]

Thus in this case an innocuous clause hidden in a printed page of "terms and conditions" if construed as did the judge in this case may well discourage some home owners from ever effectively pressing claims against builders such as these defendants. Certainly if the claim is for $100, which claim could be filed for $2 in the small claims court, and the matter can be transferred to arbitration with a filing fee of $100, such an action would effectively preclude the home owner from ever securing a forum in which his controversy could be heard. So, too, the difference between a $50.50 filing fee in superior court and a $1,350 filing fee in arbitration over a $100,000 job seems a little out of line. To put it mildly, arbitration in these cases with home owners paying the filing fee would

[1]But with no apparent result. In referring to an insurance contract, the court in *Insurance Co. of North America* v. *Electronic Purification Co.,* 67 Cal.2d 679 [63 Cal.Rptr. 382, 433 P.2d 174], said at pages 691-692: "The instant case presents yet another illustration of the dangers of the present complex structuring of insurance policies. Unfortunately the insurance industry has become addicted to the practice of building into policies one condition of exception upon another in the shape of a linguistic Tower of Babel. We join other courts in decrying a trend which both plunges the insured into a state of uncertainty and burdens the judiciary with the task of resolving it. We reiterate our plea for clarity and simplicity in policies that fulfill so important a public service." Nevertheless, contracts of adhesion, most of which are editorial nightmares, proliferate. There is a dark suspicion that the same people who prepare these prepare income tax forms and directions as to how to put together packaged Christmas toys.

have a chilling effect upon the ambition of any home owner to pursue a claim against a builder.

This being a contract of adhesion, it will be interpreted most strongly against the party preparing it, i.e., the builder.

We turn to the history of this case.

Plaintiffs initially waived arbitration by filing a suit in the superior court on the basic contract without seeking arbitration. (*Case* v. *Kadota Fig Assn.,* 35 Cal.2d 596 [220 P.2d 912]; *Berman* v. *Renart Sportswear Corp.,* 222 Cal.App.2d 385 [35 Cal.Rptr. 218]; *Bertero* v. *Superior Court,* 216 Cal.App.2d 213 [30 Cal.Rptr. 719].) This was their prerogative. A provision for arbitration does not divest the court of jurisdiction to hear the controversy. It merely means that if one of the parties chooses arbitration, he may so petition the court and the court will stay proceedings, order arbitration, then confirm the award. (Code Civ. Proc., § 1280 et seq.) But lacking a request for arbitration, the courts stand ready, willing and able to decide controversies between the parties even though a provision for arbitration exists.

Defendants then filed a petition in the superior court to stay proceedings and order arbitration. This was their prerogative. The contract provided that arbitration was to be in accordance with the rules of the American Arbitration Association. These rules provide that the initiating party shall pay the filing fee. (Construction Industry Arbitration Rules, §§ 7, 47.) However, when the court ordered arbitration, it ordered that the plaintiffs pay the filing fee. This was error. While plaintiffs are seeking damages, they have waived arbitration. The defendants had initiated arbitration. Therefore, under the rules governing contracts of adhesion, a provision that the parties shall settle their dispute by arbitration may not be so interpreted as to force a claimant into the position of one initiating arbitration when he has, in fact, chosen to waive these proceedings. The plaintiffs chose to waive arbitration. The defendants chose arbitration. They initiated arbitration. They now have a choice. They can pay the $720 filing fee or they can remain in the superior court. Of course, had plaintiffs originally instituted arbitration, they would have had to pay the filing fee. They did not and if the defendants really want arbitration they can pay for it. The judicial zeal for arbitration cannot be blindly used so as to cause a palpable injustice.

■ But, say the defendants, be that as it may, plaintiffs are precluded from attacking the trial court's order by the rule that an order compelling arbitration is not appealable. (*Bertero* v. *Superior Court*, *supra*, 216 Cal.App.2d 213, 222; *Laufman* v. *Hall-Mack Co.*, 215 Cal.App.2d 87, 88 [29 Cal.Rptr. 829, 94 A.L.R.2d 1068].)

■ The rationale of this rule is that the order compelling arbitration is interlocutory in nature and works no hardship on the litigant because the party who objects to arbitration may win at the arbitration hearing, and if he does not, the issue is reviewable on appeal from the order of confirmation. (Code Civ. Proc., § 1294, subd. (d); *Titan Enterprises, Inc.* v. *Armo Construction, Inc.*, 32 Cal.App.3d 828, 831 [108 Cal.Rptr. 456].)

■ However, there is an exception to the one final judgment rule: " '. . . A necessary exception to the one final judgment rule is recognized where there is a final determination of some *collateral matter* distinct and severable from the general subject of the litigation. If, e.g., this determination requires the aggrieved party immediately *to pay money or perform some other act*, he is entitled to appeal even though litigation of the main issue continues.' " [Original italics.] (*Efron* v. *Kalmanovitz*, 185 Cal.App.2d 149, 154 [8 Cal.Rptr. 107].)

■ The instant case clearly comes within that rule. The order made requires the aggrieved party, i.e., the plaintiffs, immediately to pay money, i.e., the $720 arbitration filing fee. While we know nothing of the financial condition of the plaintiffs, if this order remains unchallenged it might well deprive them of any forum for resolving their complaints. The order that the plaintiffs pay the arbitration filing fee is collateral and directs the payment of money. It is appealable.

In conclusion, there are many citizens who are not paupers who do not have sufficient funds to pursue arbitration when the filing fee is as large as was the filing fee in this case. For these citizens the arbitration remedy is illusory. As a matter of fact, the larger the extent of the builder's alleged breach, the more insulated he becomes from liability to those financially marginal citizens. There is nothing immoral or illegal in a citizen saving over the years just enough money to remodel his home.

However, a contractor may not use a provision in a contract such as this to effectively deny such home owner an opportunity to press a damage claim against him.

Judgment reversed.

Kerrigan, J., and Kaufman, J., concurred.