[Civ. No. 47529. Second Dist., Div. Two. June 21, 1976.]

LOUIS JOHN ARRIETA, Plaintiff and Appellant, v.
PAINE, WEBBER, JACKSON & CURTIS, INCORPORATED et al.,
Defendants and Respondents.

**COUNSEL**

Sherman S. Weber for Plaintiff and Appellant.

Stephens, Jones, LaFever & Smith, Eugene W. Bell, John F. Busetti and Michael J. Abbott for Defendants and Respondents.

**OPINION**

**FLEMING, J.**—During 1973 and 1974 appellant Louis John Arrieta lost substantial sums of money (assertedly, $35,000) by extensive and continuous speculation on margin in silver futures. He sued his stockbrokers, respondents Paine, Webber, Jackson & Curtis, Inc., and their account executives Sterling Clark and William C. Robbins, Jr., for negligence, fraud, breach of fiduciary duty, conversion, breach of contract, money had and received, and intentional infliction of emotional distress, alleging that respondents violated his trading instructions, executed trades without authority, churned his account, gave false reports about the silver market, and then told him to go fishing and forget his losses. The complaint prayed for general and special damages of $500,000 and exemplary damages of $1,500,000.

Respondents petitioned to compel arbitration of these charges pursuant to a clause in a customer's agreement signed by appellant: "If any controversy arises out of this contract it shall be determined by arbitration. Such arbitration shall be in accordance with the rules, then obtaining, of the American Arbitration Association, or of the Arbitration Committee of the New York Stock Exchange as I may elect. I authorize you, if I do not make such election by registered mail addressed to you at your main office within fifteen (15) days after receipt of notification from you requesting such election, to make such election in my behalf. Any arbitration hereunder shall be before at least three arbitrators and judgment upon the award rendered by the arbitrators or a majority of them may be entered in any court, state or federal, having jurisdiction."

Thereafter, appellant and respondents stipulated that the suit be stayed and the controversy submitted to arbitration "in accordance with the Rules of the Arbitration Committee of the New York Stock Exchange, Inc. or the Commercial Arbitration Rules of the American Arbitration Association."

Appellant submitted his claim to the Arbitration Board of the New York Stock Exchange, and respondent Paine, Webber counterclaimed for attorney's fees and costs. After a hearing, the board dismissed both claims and assessed costs of $240 against respondent Paine, Webber.

Appellant petitioned the superior court to vacate the arbitration award and order new arbitration before the Commercial Committee of the American Arbitration Association. Respondents petitioned the court to confirm the arbitration award. Both petitions were submitted on affidavits, and the court denied appellant's petition and granted respondents' petition.

This appeal is from the "judgment of confirmation of the arbitration award" and the "order dismissing the petition to vacate the arbitration award . . . and to order arbitration before . . . the American Arbitration Association."[1]

In support of his petition appellant offered his own affidavit and affidavits of his two attorneys which, in summary, averred the following:

Appellant wanted to submit his claim to the American Arbitration Association but he could not pay the $7,000 filing fee required by the substantial size of his claim ($1,316,282.50). Respondents' attorney promised that if he submitted his claim to the Arbitration Board of the New York Stock Exchange, Inc., respondents would advance the $120 filing fee when appellant submitted his claim to the board, however, respondents refused to pay the filing fee and appellant had to borrow the $120. The board sent appellant the names of the five arbitrators but appellant had no right to select the arbitrators and no knowledge of their backgrounds, occupations, or connections. He was prohibited from inquiring into those facts. One arbitrator did not receive notice of the

---

[1]The trial court never entered judgment on its order confirming the arbitration award. The judgment of confirmation, not the order granting the petition, is appealable. (*Hohn v. Hohn*, 229 Cal.App.2d 336, 338-339 [40 Cal.Rptr. 125]; Code Civ. Proc., §§ 1287.4 and 1294, subd. (d).) But the order dismissing the petition to vacate the arbitration award and to order new arbitration is appealable (Code Civ. Proc., § 1294, subds. (a) and (b)), and all of appellant's contentions may be reviewed on that appeal.

hearing or background materials, he arrived two hours late dressed in gardening clothes, thus degrading the proceedings, and did not appear to understand the proceedings. A court reporter transcribed the arbitration proceedings. Appellant presented 90 percent of the testimony, respondents only 10 percent; his evidence was overwhelming, theirs insubstantial. Respondents' attorney vilified appellant, repeatedly calling him a liar and other epithets. Appellant objected, but the arbitrators allowed the attorney to continue. This contemptible conduct destroyed the fairness of the proceedings and unduly influenced the arbitrators' decision. The arbitration assistant said he had never experienced such conduct by counsel in any of his arbitration proceedings. The proceedings were adjourned and continued for a month because the arbitrator who arrived late had another appointment. Before the second hearing day, appellant learned of a recent court decision which would require respondents to pay any arbitration filing fees. In light of this decision and the conduct of the attorney for respondents on the first hearing day, appellant requested the proceedings be postponed so he could seek arbitration before the American Arbitration Association. The arbitration assistant said he would refund appellant's $120 filing fee but would not postpone the proceedings. The hearing on the second day lasted only two hours. The arbitrators left for home shortly after the hearing, signifying they did not deliberate on appellant's claim and had come with a preconceived verdict against him.

In opposition to appellant's affidavits, respondents offered the affidavits of their own attorneys and representatives of the arbitration board. Counsel for respondents in pre-arbitration proceedings declared that he never promised that respondents would pay the arbitration filing fee. Counsel for respondents at the arbitration proceeding declared that he "openly questioned [appellant's] honesty and truthfulness during the course of the proceedings in view of the fact that [appellant's] testimony at times was inconsistent with prior testimony and also inconsistent with his written claims." He rejected "as false and inaccurate the allegations and accusations made by [appellant]." The arbitration assistant on the first hearing day declared that he told appellant's attorney, "I have assisted at other arbitration proceedings where [respondents' counsel] has appeared as counsel, and I don't ever remember him getting as upset as he was today." The arbitration assistant on the second hearing day declared that prior to the arbitration appellant was notified: " 'The parties and counsel are warned that no communication with the arbitrators pertaining to these proceedings or to the controversy is permitted except through the Arbitration Director. Should either party

believe an arbitrator disqualified for any cause, he should notify the Arbitration Director at once.' "

The arbitration rules provide for distribution of information on each arbitrator on request of a party but appellant never inquired about the arbitrators. Appellant has received a refund of his $120 filing fee. In the opinion of both arbitration assistants, the arbitrator who arrived late and counsel for respondents conducted themselves properly throughout the proceedings.

■ Appellant's first contention is that respondents obtained the arbitration award by corruption, fraud, and undue means. (Code Civ. Proc., § 1286.2, subd. (a).) Appellant argues that by calling appellant a liar counsel for respondents turned the arbitration into a "Star Chamber" proceedings and "successfully intimated to the arbitration panel that it should dismiss appellant's claim, which it did. For two members of the panel were stockbrokers who were given a message by . . . counsel of the securities industry, to corrupt, influence and induce the other three members of the panel to dismiss appellant's claim in arbitration."

We reject this contention. We do not condone appeals to passion and prejudice by counsel, but "accusations of misconduct of counsel read out of context frequently exaggerate its seriousness." (*Love* v. *Wolf,* 226 Cal.App.2d 378, 385 [38 Cal.Rptr. 183].) "[I]t is only the record as a whole, and not specific phrases out of context, that can reveal the nature and effect of such tactics." (*Sabella* v. *Southern Pac. Co.,* 70 Cal.2d 311, 318 [74 Cal.Rptr. 534, 449 P.2d 750].) Appellant fails to present the whole record for consideration by the court. He does not even cite the specific portions of the record to which he objects. This was a hearing before five arbitrators who, in the usual case, could be expected to ignore the irrelevant antics of counsel. Appellant's unsupported conclusions on the conduct of the arbitrators in decision-making are, on the basis of the record before the court, the product of overfertile imagination.

■ Appellant's second contention is that he established sufficient cause to justify a postponement of the arbitration. (Code Civ. Proc., § 1286.2, subd. (e).) He argues respondents induced him to submit to arbitration before the stock exchange board on a false promise to pay the $120 filing fee, and under the then-recent case *Spence* v. *Omnibus Industries,* 44 Cal.App.3d 970 [119 Cal.Rptr. 171], respondents would have been required to pay the $7,000 filing fee, which he could not

afford, for arbitration before his first choice, the American Arbitration Association.

This contention is without merit. First, we cannot accept the premise that respondents induced appellant to arbitrate before the board on a false promise to pay the filing fee. Respondents' affidavits contradicted this allegation. On appeal, the facts must be viewed in a light most favorable to respondents, and we must presume the trial court resolved in favor of respondents any factual conflict in the affidavits. (*Manson* v. *Wilcox*, 140 Cal. 206, 209 [73 P. 1004].)

Second, we reject appellant's application of *Spence* v. *Omnibus Industries*, *supra*, to the cause at bench. The court in *Spence*, a case involving a standard building contractor's agreement, summarized its holding as follows: ". . . Therefore, under the rules governing contracts of adhesion, a provision that the parties shall settle their dispute by arbitration may not be so interpreted as to force a claimant into the position of one initiating arbitration when he has, in fact, chosen to waive these proceedings. The plaintiffs chose to waive arbitration. The defendants chose arbitration. They initiated arbitration. They now have a choice. They can pay the $720 filing fee or they can remain in the superior court. Of course, had plaintiffs originally instituted arbitration, they would have had to pay the filing fee. They did not and if the defendants really want arbitration they can pay for it. The judicial zeal for arbitration cannot be blindly used so as to cause a palpable injustice." (44 Cal.App.3d at p. 975.) Here, appellant has not established that he was forced to arbitration. Before the trial court could rule on respondents' petition to compel arbitration, appellant stipulated to a stay of proceedings while he pursued arbitration. Here, appellant has not established the customer's agreement was a contract of adhesion. He has not shown it was offered on a "take it or leave it" basis or that its subject matter was a public need. (*Vernon* v. *Drexel Burnham & Co.*, 52 Cal.App.3d 706, 714-715 [125 Cal.Rptr. 147].) Nor has he proved arbitration would be contrary to the reasonable expectations of the parties. (*Frame* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 20 Cal.App.3d 668, 672 [97 Cal.Rptr. 811].)

Appellant also argues on an agency theory that he had the power to revoke the right of the arbitrators to proceed. This argument is patently erroneous. An agreement to submit to arbitration is valid, enforceable, and irrevocable, save upon grounds for revocation of any contract. (Code Civ. Proc., § 1281.) ■ "Once a controversy is submitted to arbitra-

tion, it remains before the arbitrators until they have completed their determination of the matter, unless the parties mutually agree to withdraw it." (*Gerard* v. *Salter,* 146 Cal.App.2d 840, 844 [304 P.2d 237].)

■ Appellant's third contention is that the composition of the arbitration panel denied him due process and equal protection of the laws. He argues there were no neutral arbitrators, he had no voice in their selection, and he was forbidden from inquiring into their backgrounds.

This contention, too, is without merit. Appellant offers not a scintilla of evidence the arbitrators were *in fact* biased. His opinions about the arbitrators' conduct prove nothing. (See *Lauria* v. *Soriano,* 180 Cal.App.2d 163, 169-170 [4 Cal.Rptr. 328].) ■ Potential unfairness from the non-neutral nature of an arbitrator is not a ground for vacation of the arbitration award. (*Federico* v. *Frick,* 3 Cal.App.3d 872, 876 [84 Cal.Rptr. 74].) ■ Under arbitration rules appellant had the opportunity to obtain information about the arbitrators and to disqualify any who were biased. He availed himself of neither opportunity. (See *Isaacson* v. *Hayden, Stone Incorporated* (S.D.N.Y. 1973) 359 F.Supp. 1050; *Garfield & Co.* v. *Wiest* (2d Cir. 1970) 432 F.2d 849.)

■ Appellant's final contention is that the trial court erred in failing to make findings of fact and conclusions of law. Code of Civil Procedure section 1291 requires the court to make findings of fact and conclusions of law whenever the court renders an appealable arbitration order or judgment. *Charlton Co.* v. *Aerfab Corp.,* 56 Cal.App.3d 808, 813 [128 Cal.Rptr. 878], interprets section 1291 in the light of Code of Civil Procedure section 632 and rule 232 of the California Rules of Court and requires that "when disputed issues of fact are involved, the trial court must announce an intended decision rather than making a final order or judgment which does not give a party an opportunity to request written findings of fact and conclusions of law."

Appellant raises this contention for the first time on appeal in a supplemental brief filed the day of oral argument. He never requested findings of fact and conclusions of law in the trial court. The record discloses that the trial court indicated its intended decision by its minute order denying appellant's petition and granting that of Paine, Webber. Appellant then had 10 days to request findings of fact and conclusions of law. He did not do so, and thereafter the court's ruling became final. (Code Civ. Proc., § 632; Cal. Rules of Court, rule 232.) Appellant thus

waived any right to findings of fact and conclusions of law. (*Stermer* v. *Modiano Constr. Co.,* 44 Cal.App.3d 264, 271-272 [118 Cal.Rptr. 309].)

The appeal from the judgment is dismissed. The order is affirmed.

Roth, P. J., and Beach, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 18, 1976.