Filed 5/22/23 Taylor v. Dimonte CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| RICHARD TAYLOR et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> ANTHONY A. DIMONTE et al., <br><br> Defendants and Respondents. | B310227 <br><br> (Los Angeles County <br> Super. Ct. No. 19STCV19048) |

APPEAL from an order of the Superior Court of Los Angeles County, Ruth Ann Kwan, Judge. Affirmed.

Law Office of Stewart Levin, Stewart Levin; Joseph S. Socher, Esq., APC and Joseph S. Socher for Plaintiffs and Appellants.

Kaufman Dolowich Voluck, Andrew J. Waxler, Courtney Curtis-Ives and Jennifer E. Newcomb for Defendants and Respondents.

_____

Plaintiffs and appellants Richard Taylor and Wingate Holdings, LLC (the LLC) sued their former attorneys, defendants and respondents Anthony A. Dimonte, Elyssia Musolino and Adli Law Group, P.C., for legal malpractice and related claims. Defendants successfully moved to compel arbitration of the dispute. Months later, claiming they could not afford the expected arbitration fees, plaintiffs filed a motion to have the trial court either order defendants to pay all the required arbitration fees or alternatively find defendants waived their contractual right to arbitration by failing to pay those fees. The court denied the motion, finding that plaintiffs had failed to establish an inability to pay their share of the fees.

Plaintiffs now appeal, arguing the trial court erred in finding both that plaintiffs failed to establish an inability to pay the applicable arbitration fees and that Taylor's testimony about his finances was not credible. We find no reversible error and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Taylor and the LLC Sue for Legal Malpractice

On May 31, 2019, Taylor and the LLC sued defendants for legal malpractice, breach of fiduciary duty and client abandonment. The complaint alleged that Taylor was the sole member of the LLC and that "[the company's] property was for all practical purposes owned and controlled [by] Taylor." Plaintiffs alleged that defendants incompetently represented them in an underlying elder abuse lawsuit brought against them by Taylor's mother concerning a real estate project, and pressured and manipulated Taylor into accepting a settlement that failed to adequately compensate plaintiffs for their interests in the project. Taylor alleged that he was not competent to enter

2

the settlement as a result of "a severe and significant breakdown of his mental and physical health" which began in March 2016.

## B. The Trial Court Grants Defendants' Motion to Compel Arbitration

Defendants filed a motion to compel arbitration on August 29, 2019. The record does not include the pleadings concerning that motion or a reporter's transcript for the hearing on it, but the parties agree the motion was based on a mandatory arbitration provision in the attorney retainer agreement. The court granted the motion on November 26, 2019.

## C. The Parties Discuss Arbitrator Selection and Payment

Approximately three months later, on February 17, 2020, plaintiffs' counsel wrote to defendants saying Taylor was unable to afford his share of the arbitration costs. Counsel requested that defendants "agree to either pay plaintiff's share of the arbitration cost in this matter or waive the right to arbitrate." Two days later, defendants responded. Defense counsel noted plaintiffs' letter did not mention the LLC, and therefore defendants assumed only Taylor was requesting relief. Defense counsel requested that Taylor provide evidentiary support for his financial hardship claim in the form of a statement signed under penalty of perjury along with supporting documentation.

Taylor then clarified that neither he nor the LLC could pay the arbitration fees. He provided an affidavit in which he averred that his "earned income" for 2017 through 2019 was less than $15,612.60 and that he "ha[d] no assets which c[ould] be sold to raise funds to defray the cost of arbitration." The declaration stated Taylor's 2017 to 2019 tax returns were attached as exhibits; no such returns were in fact appended.

3

Taylor instead provided an unsworn statement from a certified public accountant dated February 25, 2020, stating, "I am able to attest after seeing Richard T. Talylor's [*sic*][1] tax returns for 2017 and 2018, that his income for both years (specifically including earned income) was below 125 [percent] of the federal poverty level for a single person and was in fact below 100 [percent] of that level for both years. [¶] Further, although the 2019 return is not complete, the information to hand [*sic*] is consistent with the figures for 2017 and 2018."

When defense counsel requested the tax returns mentioned in the declaration but not attached, plaintiffs' counsel responded that Taylor was concerned with releasing his tax returns, and "If that really makes a large difference to you I might be able to arrange a private viewing . . . ." Defense counsel then requested Taylor instead fill out and sign the Judicial Council court fee waiver form. Defense counsel also indicated research showed Taylor's name associated with real property at 455 Nauset Road, Eastham, Massachusetts, and that the property was recently transferred for nominal value to someone with whom Taylor had a longstanding relationship; defense counsel asked whether Taylor still had an interest in the property.

Taylor refused to provide a completed fee waiver form, saying he was "concern[ed] about his financial information falling into the wrong hands." Taylor indicated he was willing to make available redacted copies of his Form 1040s for the last three

---

[1] In addition to misspelling Taylor's last name, the accountant's note identified Taylor's middle initial as "T"; this conflicts with Taylor's later declaration, which identified his middle initial as "P."

years for viewing on an attorney eyes-only basis. No such returns were in fact made available for review. Plaintiffs' counsel later emailed saying Taylor would submit an affidavit to defense counsel "so that you can reconsider payment of costs." No further affidavit was provided.

During the same time the parties were discussing proof of Taylor and the LLC's financial condition, counsel for both parties also discussed selection of an arbitrator but were unable to agree on either an arbitration service provider or an individual arbitrator. On February 19, 2020, in their initial response to plaintiffs' request regarding the arbitration fees, defendants proposed that instead of using the American Arbitration Association, as required by the parties' agreement, the parties could use a less expensive provider such as JAMS, ADR Services or Judicate West. Plaintiffs' counsel initially rejected the proposal, insisting defendants first agree to pay all arbitration fees. Plaintiffs' counsel later sent an e-mail stating plaintiffs "may be open to using Judicate West or JAMS"; counsel proposed "using a retired judge without prior experience with either side's counsel" or someone else on whom the parties could mutually agree. On May 6, 2020, defense counsel proposed five JAMS arbitrators and one Judicate West arbitrator with no prior experience with defense counsel. Plaintiffs' counsel responded by asking for further vetting about the arbitrators' prior experiences which defense counsel declined to do. Plaintiffs did not propose any arbitrators.

**D.     Taylor and the LLC Move to Compel Payment of Plaintiffs' Share of the Arbitration Fees and the Court Denies the Motion**

On May 8, 2020, Taylor and the LLC filed a motion pursuant to *Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87 (*Roldan*) to compel defendants to pay plaintiffs' share of the arbitration fees or waive their right to arbitration. *Roldan* holds that indigent plaintiffs can seek to "be excused from the obligation to pay fees associated with arbitration." (*Id.* at p. 95.) *Roldan* requires the trial court first "estimate the anticipated cost of the arbitration proceeding previously ordered, and then determine whether any of [the] plaintiffs are financially able to pay their pro rata share of that cost. If the court determines that any plaintiff is unable to do so, it must issue an order specifying that [the defendants] ha[ve] the option of either paying that plaintiff's share of the arbitration cost or waiving [their] right to arbitrate that plaintiff's case and allowing the case to proceed in court." (*Ibid*.)

In seeking relief, plaintiffs relied on declarations from their counsel and Taylor. Although the parties had not yet agreed on an arbitrator, counsel declared that the arbitration costs, including the forum's fees and the fees charged by the arbitrator, would likely be between $75,000 and $135,000; counsel's declaration did not specify whether this estimate was for the total arbitration cost to both parties, or only plaintiffs' share, although based on the calculations it appears to be a total cost to both parties. In his declaration, Taylor averred that he "anticipate[d] the overall costs to plaintiffs to complete arbitration would be upwards of $100,000, not including expert witness and discovery-related fees"; this was based in part on his assertion that the

6

administrative fees would depend on the amount of the claim, and the "current amount at issue in this case is likely to exceed" $16 million.

Taylor averred that neither he nor the LLC could afford the initial arbitration filing fee or their share of the arbitrator's fees. Taylor did not provide any information regarding the LLC's finances, but averred as follows regarding his own finances. His "earned income" for the previous three years had been less than $15,612.60 and it was "likely that [his] ability to earn income for 2020 w[ould] be even less." He was "not working as a result of the COVID-19 pandemic and ha[d] no assets which [he could] liquidate to fund" his share of the arbitration costs. "On March 13, 2014, [Taylor] conveyed [his] ownership in 455 Nauset Road, Eastham, Massachusetts to the Hillary Madigan Trust,"[2] and Taylor was "not the trustee of that trust." In addition, "455 Nauset Road is encumbered with loans that exceed the current 2020 tax assessor-appraised value." He had "a single checking account with a balance of less than $1,000 and a retirement account with [a] balance less than $500," and had "no other business or personal investments or accounts."

Taylor stated in his declaration, "I am prepared to provide partially redacted copies of my federal tax returns for 2017-2019 for an in[ ]camera, court's eyes-only review, or other means as

---

[2] Taylor later referred to the trust as the "Hillary Madigan Family Trust." Subsequent references to the trust will identify it as the "Hillary Madigan Family Trust."

7

ordered by the [c]ourt."[3]   (Italics omitted.)  Taylor explained that he did not want to disclose his tax information more broadly because defendants and others had previously improperly used his personal information.  As an exhibit to his declaration, Taylor submitted the February 25, 2020, unsworn certified public accountant note referenced above.

Defendants opposed the motion, contending that Taylor and the LLC had not provided sufficient information for the court to determine how much the arbitration would cost them.  Defendants argued that Taylor and the LLC had not cooperated in selecting an arbitrator, which made it difficult to accurately estimate the arbitration fees.  Defendants also contended that Taylor had not provided a sufficiently complete summary of his financial condition.  In addition, they argued that plaintiffs' motion was a delay tactic, pointing out that plaintiffs could have presented their claim of inability to pay the arbitration fees in response to the motion to compel arbitration, but instead waited nearly three months after the court had granted the motion to raise the issue with defendants.

On August 20, 2020, the court heard oral argument on the motion and continued the hearing to October 22, 2020.  The record contains no reporter's transcript for this hearing.  The court's minute order reflects that "The parties will select an arbitrator through J[AMS] by [September 30, 2020]" and that Taylor "will submit an additional declaration regarding assets and liabilities by [September 30, 2020]."

---

[3] Although Taylor indicated he was prepared to provide partial, redacted tax returns to the court in camera, there is no indication in the record he ever attempted to do so.

On September 29, 2020, Taylor submitted a supplemental declaration in which he set forth his employment history in real estate development, and averred that by 2016 he had "amassed over $17[ million] of assets and receivables, in addition to [his] home," but he "was incapacitated between 2016 and 2018 as a result of both physical and mental health matters that required 24-hour a day monitoring and care." He claimed the elder abuse lawsuit brought against him by his mother and defendants' alleged actions in defending it "were the primary cause of [his] financial losses" from his $17 million net worth without further specifics.

As to his then-current financial status, Taylor averred as follows. He "d[id] not have any direct or indirect ownership or beneficiary rights in any investment, brokerage or financial accounts" other than his checking account (which had a balance of $1,000) and his retirement account (which had a balance of less than $500) and "d[id] not have any beneficiary rights or ownership in any LLC's, corporations, or partnerships except" the LLC which had "no assets." He "d[id] not have any beneficiary rights in any trusts except the Hillary Madigan Family Trust (established in 2014) and a client trust account with [defendant] Adli Law Group PC (established 2016)." He "ha[d] approximately $8,000 in credit card debt, $1,030,000 in real estate debt and a personal loan in the principal amount of $246,000 which [wa]s collateralized by approximately $130,000 in beneficiary rights to equity in the 455 Nauset Road real property." Taylor calculated his net equity in the Nauset Road property to be $130,000 by assuming its value was $1,230,000 (based on an appraisal from

9

July 2020 in that amount) and subtracting $1,020,000[4] in real estate debt and $80,000 based on "typical sales costs of 6[ percent]." Taylor had earned "approximately $15,000 in 2019 for providing property management services," and had been receiving unemployment benefits since March 2020, which were set to expire on December 31, 2020.

Taylor also provided additional information about the Hillary Madigan Family Trust. He stated that he established the trust in 2014 and placed his home at 455 Nauset Road and his interest in the LLC into the trust.[5] He described the 455 Nauset Road property as "a single-family home with two Accessory Dwelling Units." Kenley Branscome was the trustee of the Hillary Madigan Family Trust; Branscome "maintain[ed] a home outside the Commonwealth of Massachusetts and also reside[d] at the 455 Nauset Road property." Taylor was "obligated to pay $1,000 per month for housing expenses and $500 per month for household expenses to . . . Branscome . . . in accordance with the terms of the loan [they] entered in 2018"; this was apparently the $246,000 loan which was "collateralized" by Taylor's "beneficiary rights to equity in the 455 Nauset Road real property." Taylor

---

[4] Taylor averred in one part of his declaration that he had $1,030,000 in real estate debt and in another part that he had $1,020,000 in real estate debt.

[5] As noted above, plaintiffs' complaint alleges that Taylor was "the sole member" of the LLC and "[the company's] property was for all practical purposes owned and controlled [by] Taylor." In his supplemental declaration, however, Taylor averred he "was a 51 [percent] beneficiary of" the LLC; three other individuals (Erik Grunigen, Patricia Taylor, and Jaden Taylor) were identified as the beneficiaries of the remaining 49 percent.

understood that Branscome "makes approximately $150,000 annually," but stated that Branscome had "no obligation to support" him.

Taylor did not attach any documentation to corroborate the statements made in his supplemental declaration, other than an unsigned one-page document without any attribution as to who prepared it titled "Financial Statement (Unaudited) September 15, 2020," which listed "[a]ssets/[l]iabilities" totaling negative $90,450, average gross monthly employment income in 2020 of $3,060 per month, and "[m]onthly [e]xpenses" totaling $3,220 per month.

On October 22, 2020, the court held a further hearing. The hearing was not transcribed. The court's minute order indicates the court denied plaintiffs' motion based on findings "that [Taylor] failed in his burden to show he has no ability to pay for arbitration" and "that [Taylor] is hiding assets through the trust." The court ordered defendants to submit a proposed order.

On December 2, 2020, the court adopted and filed the proposed order submitted by defendants. The order states, in relevant part, "The [c]ourt finds that [p]laintiffs failed to meet their burden of proving they are not financially able to pay their anticipated share of arbitration costs. The [m]otion to [c]ompel was initially heard on August 20, 2020. The [c]ourt found that [p]laintiffs had not carried their burden. The [c]ourt provided [p]laintiffs with the opportunity to provide additional financial information for consideration. The [c]ourt therefore continued the hearing on the [m]otion to [c]ompel to October 22, 2020[,] and ordered [p]laintiffs to file a supplemental declaration with specific information regarding all financial interests whether direct or indirect. Plaintiffs filed the Supplemental Declaration

11

of Richard P. Taylor (the 'Supplemental Declaration') on September 29, 2020.  [¶]  The [c]ourt finds that the Supplemental Declaration, along with the other pleadings filed by [p]laintiffs, are not sufficient to satisfy [p]laintiffs' burden of proof.  The [c]ourt also finds . . . Taylor not to be credible.  The [c]ourt believes that . . . Taylor is using the Hillary Madigan Family Trust (the 'Trust') to hide assets.  The Supplemental Declaration fails to provide any information regarding the income or expenses of the Trust, even though . . . Taylor established this Trust, is a beneficiary of this Trust, and now owns his primary residence through this Trust.  The Supplemental Declaration similarly fails to provide any information regarding the nature or use of the two accessory dwelling units at . . . Taylor's residence, i.e.[,] whether any income is derived therefrom.  [¶]  The [c]ourt also questions the true nature of the financial relationship with trustee Kenley Branscome.  No information was provided in the Supplemental Declaration regarding the basis for the $150,000 in income paid to Mr. Branscome.  Further[,] no information, or documentation, was provided regarding the purported loan that Mr. Branscome, a [t]rustee of the Trust, made to . . . Taylor, secured by . . . Taylor's residence which is owned by the Trust."

Plaintiffs timely appealed.[6]

---

[6] After the notice of appeal was filed, defendant Adli Law Group, P.C. filed for bankruptcy, automatically staying proceedings in this court.  This court was informed in August 2022 that the bankruptcy court had lifted the automatic stay with regard to this appeal.

## DISCUSSION

### A.    Appellate Jurisdiction and Standard of Review

#### 1.    *The Collateral Order Doctrine*

We first address our jurisdiction to hear an appeal of the order at issue. " 'Appellate courts have jurisdiction over a direct appeal, like the present one, only where there is an appealable order or judgment.' [Citation.]" (*Levinson Arshonsky & Kurtz LLP v. Kim* (2019) 35 Cal.App.5th 896, 903.) Plaintiffs contend, defendants do not dispute, and we agree that the order at issue is appealable under the collateral order doctrine, an exception to the one final judgment rule. (*Spence v. Omnibus Industries* (1975) 44 Cal.App.3d 970, 976 [order requiring payment of arbitration filing fee appealable as collateral order, because "if this order remains unchallenged it might well deprive [the plaintiffs] of any forum for resolving their complaints"].)

#### 2.    *Standard of Review*

We review pure questions of law de novo. (*Mendez v. Mid-Wilshire Health Care Center* (2013) 220 Cal.App.4th 534, 541.) As for factual findings, "the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination." (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.) "If the superior court's decision regarding arbitrability is based on resolution of disputed facts, we review the decision for substantial evidence." (*Baker v. Italian Maple Holdings, LLC* (2017) 13 Cal.App.5th 1152, 1158; see also *Hang v. RG Legacy I, LLC* (2023) 88 Cal.App.5th 1243, 1255-1257 [reviewing findings of inability to pay arbitration fees and costs for substantial

evidence].)  " 'We must accept the trial court's resolution of disputed facts when supported by substantial evidence; we must presume the court found every fact and drew every permissible inference necessary to support its judgment, and defer to its determination of [the] credibility of the witnesses and the weight of the evidence.  [Citation.]'  [Citation.]" (*Engineers & Architects Assn. v. Community Development Dept.* (1994) 30 Cal.App.4th 644, 653.)

"Where . . . ' "the trier of fact has expressly or implicitly concluded that the party with the burden of proof did not carry the burden and that party appeals," ' generally ' "the question for a reviewing court becomes whether the evidence compels a finding in favor of the appellant as a matter of law.  [Citations.] Specifically, the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' [Citations.]" (*Phipps v. Copeland Corp. LLC* (2021) 64 Cal.App.5th 319, 333.)[7]

---

[7] We reject defendants' contention that an abuse of discretion standard applies here.  A trial court has discretion over how to assess a party's ability to pay arbitration fees, whether through submission of a Judicial Council fee waiver form, declarations with supporting exhibits, permitting limited discovery, or an evidentiary hearing. (*Aronow v. Superior Court* (2022) 76 Cal.App.5th 865, 884-885.)  Plaintiffs raise no appellate issue about the trial court's decision to proceed by way of declaration and supporting exhibits as opposed to other means. We therefore agree with plaintiffs that abuse of discretion review is inapposite.

14

## B.    The Applicable Law

Our Legislature has declared that "our legal system cannot provide 'equal justice under law' unless all persons have access to the courts without regard to their economic means." (Gov. Code, § 68630, subd. (a).)  Thus, "under California law when a litigant in a judicial proceeding has qualified for in forma pauperis status, a court may not consign the indigent litigant to a costly private alternative procedure that the litigant cannot afford and that effectively negates the purpose and benefit of in forma pauperis status." (*Jameson v. Desta* (2018) 5 Cal.5th 594, 622.)

In *Roldan*, indigent plaintiffs were excused from paying fees for an ordered arbitration, because "to rule otherwise might effectively deprive them of access to any forum for resolution of their claims." (*Roldan*, *supra*, 219 Cal.App.4th at p. 96.)  The *Roldan* court stated that while it could not "order the arbitration forum to *waive its fees*" and did not "have authority to order [the defendants] to pay [the] plaintiffs' share of those fees," it did have authority to "give [the defendants] a choice: if the trial court determines that any of [the] plaintiffs is unable to share in the cost of the arbitration, [the defendants] can elect to either pay that plaintiff's share of the arbitration cost and remain in arbitration or waive [their] right to arbitrate that plaintiff's claim." (*Ibid*.)  *Roldan* provides that a trial court should first estimate the anticipated cost of the previously ordered arbitration proceeding, and then determine whether any of the plaintiffs are financially able to pay their pro rata share of that cost. (*Ibid*.)  If the trial court determines that any plaintiff is unable to do so, it should order that the defendant has the option of either paying that plaintiff's share of the arbitration cost or waiving the defendant's right to arbitrate that plaintiff's case and

15

allow the case to proceed in court. (*Ibid*.; see also *Hang v. RG Legacy I, LLC*, *supra*, 88 Cal.App.5th at pp. 1253-1255; *Weiler v. Marcus & Millichap Real Estate Investment Services, Inc.* (2018) 22 Cal.App.5th 970.)[8]

It is "the trial court [that] should decide the issue of arbitrator fee payment and it should be resolved before commencement of the arbitration." (*Aronow v. Superior Court*, *supra*, 76 Cal.App.5th at p. 884.) A party need demonstrate only an inability to pay the necessary fees; in forma pauperis status such as eligibility for a court fee waiver is not required. (*Id*. at pp. 880-881, 884.)

## C. The Trial Court Did Not Err in Denying Plaintiffs' Motion

At the August 20, 2020 hearing, the court concluded that plaintiffs' evidence did not show they were unable to pay the arbitration fees. The trial court nevertheless provided plaintiffs with another opportunity to submit evidence regarding their financial condition. The court also provided the parties with time to select an arbitrator, which would allow a more accurate cost estimation. After reviewing plaintiffs' additional submission and holding another hearing, the court concluded that plaintiffs had failed to carry their burden to demonstrate they could not afford the arbitration fees. The court additionally found that Taylor

---

[8] Although defendants do not argue it should apply, we note that *MKJA, Inc. v. 123 Fit Franchising, LLC* (2011) 191 Cal.App.4th 643 (*MKJA*) held that "a trial court may not lift a stay of litigation merely because a party cannot afford the costs associated with [an ordered] arbitration." (*Id*. at p. 660.) We find *MKJA* unpersuasive for the reasons explained in *Aronow v. Superior Court*, *supra*, 76 Cal.App.5th at pages 873-883.

was not credible, and stated its belief that Taylor was using the Hillary Madigan Family Trust to hide assets.

Plaintiffs first assert the court erred by failing to determine the cost of the arbitration as required by *Roldan*, *supra*, 219 Cal.App.4th 87, in either the minute order or the order after hearing. We reject this argument because we " 'presume the court found every fact and drew every permissible inference necessary to support its judgment.' " (*Engineers & Architects Assn. v. Community Development Dept.*, *supra*, 30 Cal.App.4th at p. 653; see also *Jameson v. Desta*, *supra*, 5 Cal.5th at p. 609 [" 'In the absence of a contrary showing in the record, all presumptions in favor of the trial court's action will be made by the appellate court' "].)

There is no contrary showing here. We lack a reporter's transcript, and the record available to us indicates that the court did consider the amount of potential arbitration fees, as it both received plaintiffs' initial estimate and allowed additional time for the parties to select an arbitrator so they could provide a further estimate before the court ruled. While the court's order after hearing does not set forth a specific amount of expected arbitration fees, there is substantial evidence of the anticipated fees in the record and "[f]indings will be normally implied to support . . . orders if supported by substantial evidence." (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 197.)[9]

---

[9] Plaintiffs also argue the trial court failed to consider that, even if they were able to pay their share of the fee for initiating the arbitration, they did not have enough money to pay for the arbitrator's fees. This argument fails because we presume the court considered all the arbitration fees, not just the initial fee

17

Plaintiffs further assert their evidence of limited financial means was undisputed, and therefore sufficient to carry their burden of proof. It is more accurate to say, however, that plaintiffs' evidence was uncontradicted, not that it was undisputed. While defendants did not submit evidence contradicting Taylor's declarations, Taylor's evidence was disputed as defendants contested its veracity and probative value. "[T]he trial court is not bound by uncontradicted evidence." (*Adoption of Arthur M.* (2007) 149 Cal.App.4th 704, 717.) Given the trial court's finding that plaintiffs failed to carry their burden of proof, the question for this court is whether plaintiffs' evidence compels a finding in their favor, specifically whether that uncontradicted evidence was (1) unimpeached and (2) of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding that plaintiffs lacked the ability to pay the required arbitration fees. (*Phipps v. Copeland Corp. LLC, supra,* 64 Cal.App.5th at p. 333.)

While it may have been uncontradicted, the evidence before the court was impeached through internal inconsistencies and omissions, and left ample room for a judicial determination that it was insufficient to carry plaintiffs' burden of proof. The pre-motion correspondence between the parties submitted to the

imposed by the forum. There is no indication that the trial court considered only the forum's initial fee; notably, the evidence plaintiffs provided did not present any specific estimate of the forum's initial fee. In any event, if plaintiffs' financial situation meaningfully changes during the arbitration our decision does not preclude them from requesting relief based on future facts and circumstances.

court showed Taylor repeatedly promising to provide financial information to support his claims of penury, only to then renege. Taylor's complaint asserted he was the sole member of the LLC and that "[the company's] property was for all practical purposes owned and controlled [by] Taylor"; he then flip-flopped and asserted he had only a 51 percent interest in the LLC as a result of a transfer that occurred years before he filed his complaint. No corroborating information about the LLC's finances was ever provided; the only evidence was Taylor's ipse dixit statements about its purported lack of assets and income.

Nor did Taylor submit sufficiently comprehensive evidence regarding his finances, including the assets and income of the Hillary Madigan Family Trust. The evidence he did submit contained red flags and lacked credibility. His initial declaration focused only on his *earned* income, which leaves out many potential sources of income including the type of passive income often received by individuals involved in real estate development like Taylor. Taylor initially averred that he had transferred his interest in the 455 Nauset Road property to the Hillary Madigan Family Trust, and that he was "not the trustee of that trust," without disclosing that he was a beneficiary of the trust or providing any other information regarding the trust or its assets. In his supplemental declaration, Taylor admitted he was a trust beneficiary but provided incomplete information regarding the assets held in the trust for his benefit. As the trial court observed, "[Taylor's] Supplemental Declaration fails to provide any information regarding the income or expenses of the [Hillary Madigan Family] Trust, even though . . . Taylor established this Trust, is a beneficiary of this Trust, and now owns his primary

19

residence through this Trust."[10]  As the trial court further observed, the supplemental declaration "similarly fails to provide any information regarding the nature or use of the two accessory dwelling units at . . . Taylor's residence, i.e.[,] whether any income is derived therefrom."[11]

---

[10] Plaintiffs contend in their opening brief that "The undisputed evidence . . . was that the residence was the *only* asset in the [Hillary Madigan Family] Trust."  However, they fail to provide any citation to the record to support this contention.  "Every brief must support any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears.  (Cal. Rules of Court, rule 8.204(a)(1)(C).) . . .  If a party fails to support an argument with the necessary citations to the record, the argument will be deemed waived." (*LA Investments, LLC v. Spix* (2022) 75 Cal.App.5th 1044, 1061.)

[11] With their reply brief, plaintiffs filed a motion requesting we take judicial notice under Evidence Code sections 451, 452 and 459 of two documents: (1) correspondence dated March 3, 2023, from the Town of Eastham regarding the 455 Nauset Road property, and (2) an order from the bankruptcy proceeding involving respondent Adli Law Group, P.C.  Defendants opposed the motion.  We decline to take judicial notice of these documents.  Neither document was submitted to the trial court.  "[N]ormally 'when reviewing the correctness of a trial court's judgment, an appellate court will consider only matters which were part of the record at the time the judgment was entered.'  [Citation.]" (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)  While an exception can be made in "exceptional circumstances" (*ibid*.), no such circumstances exist here.  Furthermore, the documents are submitted for the truth of matters asserted in them, and we cannot take judicial notice for this purpose.  (*Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 482 ["While we may take judicial notice of

In addition, Taylor never provided any reliable or credible underlying financial documents to corroborate his assertions. With his initial declaration Taylor submitted a note from an accountant. Plaintiffs state in their appellate brief that the accountant's note was signed under penalty of perjury and was a "declaration" but this is simply untrue—the document was *not* signed under penalty of perjury. Nor was it a standard financial statement or report, and it lacked other indicia of reliability. Furthermore, the note addressed only Taylor's income, which left unaddressed other possible forms of income including potential distributions from the trust and the LLC, as well as the assets of Taylor, the LLC, and the trust.

With his supplemental declaration, Taylor submitted a one-page document titled "Financial Statement (Unaudited) September 15, 2020." The document was unsigned and there was no indication who had prepared it or what it was based on. In addition to being unaudited, the statement contained no back-up schedules or explanatory details. The trial court could properly disregard this document.

Taylor stated that he was "prepared to provide partially redacted copies of [his] federal tax returns for 2017-2019 for an in[ ]camera, court's eyes-only review, or other means as ordered by the [c]ourt." (Italics omitted.) It is unclear what information Taylor proposed to redact and there is no indication in the record that Taylor took any steps to submit copies of his tax returns in camera. Plaintiffs state in their opening brief that "[t]he trial

court records and official acts of state agencies (Evid. Code, § 452, subds. (c), (d)), the truth of matters asserted in such documents is not subject to judicial notice"].)

21

court . . . declined to order such a review," but cite to nothing in the record supporting this assertion.

Finally, we note the trial court found Taylor's testimony not credible. "[U]nder substantial evidence review, appellate courts defer to a trial court's credibility determinations 'whether the trial court's ruling is based on oral testimony or declarations.' [Citations.]" (*Estate of El Wardini* (2022) 82 Cal.App.5th 870, 885-886.) "[S]o long as the trier of fact does not act arbitrarily and has a rational ground for doing so, it may reject the testimony of a witness even though the witness is uncontradicted. [Citation.] Consequently, the testimony of a witness which has been rejected by the trier of fact cannot be credited on appeal unless, in view of the whole record, it is clear, positive, and of such a nature that it cannot rationally be disbelieved." (*Beck Development Co. v. Southern Pacific Transportation Co.* (1996) 44 Cal.App.4th 1160, 1204.) For the reasons explained above and in its order, the trial court could rationally disbelieve Taylor's testimony. Plaintiffs' challenge to the trial court's finding that they failed to carry their burden to show an inability to pay arbitration fees and costs therefore fails.

## DISPOSITION

The trial court's order denying plaintiffs' motion to compel payment of arbitration fees is affirmed.  Defendants are awarded their costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:


CHANEY, J.


BENDIX, Acting P. J.

23